## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL NO. 2724 16-MD-2724 |
| | HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO: | |
| *Ahold USA, Inc., et al. v. Actavis Holdco U.S., Inc., et al.* | 18-cv-02641 |
| *The Kroger Co, et al. v. Actavis Holdco U.S., Inc., et al.* | 18-cv-284 |

### VALEANT AND OCEANSIDE'S MOTION TO DISMISS DIRECT PURCHASERS' FIRST AMENDED COMPLAINT AND KROGER PLAINTIFFS' AMENDED COMPLAINT

Pursuant to Fed. R. Civ. 12(b)(6), Defendants Valeant Pharmaceuticals North America LLC, Valeant Pharmaceuticals International, and Oceanside Pharmaceuticals, Inc. (collectively, "Valeant"), move to dismiss with prejudice all claims asserted against Valeant in: (i) the First Amended Class Action Complaint, dated December 21, 2018, filed by Ahold USA, Inc. and other Direct Purchaser Plaintiffs (Dkt. 18-02641 Doc. 11) (the "DPP Complaint"); and (ii) the Amended Complaint, dated December 21, 2018, filed by The Kroger Co., Albertsons Companies, LLC, and H.E. Butt Grocery Company L.P. (Dkt. 18-cv-284 Doc. 37) (the "Kroger Complaint") (collectively the "Complaints"). In support of this Motion, Valeant relies upon (i) Defendants' Memorandum of Law in Support of Defendants Valeant and Oceanside's Motion to Dismiss Direct Purchasers' First Amended Complaint and Kroger Plaintiffs' Amended Complaint, which is being filed contemporaneously with this Motion; (ii) Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiffs' Overarching Conspiracy Claims filed on behalf of multiple defendants, dated February 21, 2019; and (iii) the Declaration

74033275

of Jay D. Smith in Support of Valeant and Oceanside's Motion to Dismiss Direct Purchasers'

First Amended Complaint and Kroger Plaintiffs' Amended Complaint and all exhibits thereto.

 For the reasons set forth in those memoranda, this Court should dismiss all claims against

Valeant contained in the Complaints.  Valeant requests oral argument on this Motion to Dismiss,

pursuant to Rule 7.1(f) of the Local Rules of Civil Procedure.


Dated: New York, New York
  February 21, 2019

       Respectfully submitted,

       **NORTON ROSE FULBRIGHT US LLP**

      By:  */s/ Robin D. Adelstein*
        Robin D. Adelstein
        Mark A. Robertson
        Gerald A. Stein
        Matthew C. Lamb
        1301Avenue of the Americas
        New York, NY 10019-6022
        Tel.: 212-318-3000
        robin.adelstein@nortonrosefulbright.com
        mark.robertson@nortonrosefulbright.com
        gerald.stein@nortonrosefulbright.com
        matthew.lamb@nortonrosefulbright.com
        *Attorneys for Defendants Valeant*
        *Pharmaceuticals North America LLC,*
        *Valeant Pharmaceuticals International,*
        *and Oceanside Pharmaceuticals, Inc.*

74033275

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL NO. 2724<br>16-MD-2724 |
| | HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO: | |
| *Ahold USA, Inc., et al. v. Actavis Holdco U.S., Inc., et al.* | 18-cv-02641 |
| *The Kroger Co, et al. v. Actavis Holdco U.S., Inc., et al.* | 18-cv-284 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS VALEANT
AND OCEANSIDE'S MOTION TO DISMISS DIRECT PURCHASERS' FIRST
AMENDED COMPLAINT AND KROGER PLAINTIFFS' AMENDED COMPLAINT**

**FILED WITH REDACTIONS - PUBLIC VERSION**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................1

FACTUAL ALLEGATIONS ................................................................................................3

ARGUMENT ..................................................................................................................7

I.  PLAINTIFFS' ALLEGATIONS SUPPORT DISMISSAL ..................................................8

    A.  Because Plaintiffs Allege Facts Showing a Reason Exits For Valeant's Price Increase Other Than a Conspiracy, All Claims Should be Dismissed..........................9

    B.  Plaintiffs Fail To Allege Facts of Plus Factors ...........................................10

        1.  Plaintiffs Fail to Allege Motive ...........................................................11

        2.  Valeant's Behavior was not Against Its Self-Interest and was Rational ...........11

        3.  Plaintiffs Fail to Allege Traditional Conspiracy Facts .......................................12

    C.  Plaintiffs Fail to Connect Valeant to a Conspiracy......................................13

II.  KROGER PLAINTIFFS' ALLEGED METRONIDAZOLE CONSPIRACY FAILS ........14

III.  THE COURT SHOULD DISMISS VPI..................................................................15

CONCLUSION.................................................................................................15

**FILED WITH REDACTIONS - PUBLIC VERSION**

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                           **Page(s)**

*Anspach v. City of Philadelphia,*
    503 F.3d 256 (3d Cir. 2007)...........................................................................4 n.5

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..........................................................................................7

*In re Baby Food Antitrust Litig.,*
    166 F.3d 112 (3d Cir. 1999)...........................................................................11

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..........................................................................................9

*Burtch v. Millberg Factors, Inc.,*
    662 F.3d 212 (3d Cir. 2011), *cert. denied*, 566 U.S. 921 (2012)....................7, 8, 11

*In re Chocolate Confectionary Antitrust Litig.,*
    999 F. Supp. 2d 777 (M.D. Pa. 2014), *aff'd,* 801 F.3d 383 (3d Cir. 2015) .....................13, 14

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,*
    906 F.2d 432 (9th Cir. 1990), *cert. denied*, 500 U.S. 959 (1991)........................8 n.7

*In re Generic Pharmaceuticals Pricing Antitrust Litig.,*
    338 F. Supp. 3d 404 (E.D. Pa. 2018) ............................................. *passim*

*In re Graphics Processing Units Antitrust Litig.,*
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ...............................................13

*In re Ins. Brokerage Antitrust Litig.,*
    618 F.3d 300 (3rd Cir. 2010) .................................................8, 9, 10, 13

*Lifewatch Services Inc. v. Highmark Inc.,*
    902 F.3d 323 (3rd Cir. 2018) ...............................................................11

*Precision Assocs. v. Panalpina World Transport (Holding) Ltd.,*
    No. 08-CV-00042, 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011), *R&R adopted,*
    No. 08-00042, 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012) ...............................14

*In re Processed Egg Prods. Antitrust Litig.,*
    821 F. Supp. 2d 709 (E.D. Pa. 2011) .........................................................12, 15

*Radio Music License Comm., Inc. v. SESAC, Inc.,*
    29 F. Supp. 3d 487 (E.D. Pa. 2014) ...............................................................8

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.,*
    64 F. Supp. 3d 665 (E.D. Pa. 2014) .........................................................10 n.8

*Superior Offshore Int'l, Inc. v. Bristow Group,*
    490 F. App'x 492 (3d Cir. 2012) ...................................................................8

74033275

**FILED WITH REDACTIONS - PUBLIC VERSION**

*U.S. Anchor Mfg., Inc. v. Rule Industries, Inc.*,
   7 F.3d 986 (11th Cir. 1993), *cert. denied*, 512 U.S. 1221 (1994)......................9 n.8

*Valspar Corp. v. E. I. du Pont de Nemours & Co.*,
   873 F.3d 185 (3d Cir. 2017)..........................................................................10, 11, 12

*Winn-Dixie Stores, Inc. v. Eastern Mushroom Mktg. Coop.*,
   No. 15-6480, 2019 WL 130535 (E.D. Pa. Jan. 8, 2019).......................................14

*In re Wireless Telephone Services Antitrust Litig.*,
   385 F. Supp. 2d 403 (S.D.N.Y. 2005)..............................................................9 n.8

*Zachair, Ltd. v. Driggs*,
   965 F. Supp. 741 (D. Md. 1997) ....................................................................14, 15

**STATUTES:**

15 U.S.C. § 1 ...................................................................................................................8

**OTHER AUTHORITY:**

*Black's Law Dictionary* 1120 (8th ed. 2004) .................................................................9

National Institutes of Health, U.S. National Library of Medicine, DailyMed Database,
   https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid= c4e07c26-245d-3e51-
   6a47-fccde22334d2&audience=consumer.................................................................4

National Institutes of Health, U.S. National Library of Medicine, DailyMed Database,
   https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=43d5e570-f359-564d-
   9bb4-51784ad97b6f .................................................................................................4

National Institutes of Health, U.S. National Library of Medicine, DailyMed Database,
   https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=526c226a-099b-4eb3-
   943d-c88b2763b2c1&audience=consumer............................................................ 3-4

National Institutes of Health, U.S. National Library of Medicine, DailyMed Database,
   https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=ab3a8a2d-714a-4beb-
   af8a-99bc3ac3ebbe ..................................................................................................4

"Pharmaceutical Companies Buy Rivals' Drugs, Then Jack Up the Prices,"
   *The Wall Street Journal* (Apr. 26, 2015) ...........................................................1 n.2

74033275

**FILED WITH REDACTIONS - PUBLIC VERSION**

Defendants Valeant Pharmaceuticals North America LLC, Valeant Pharmaceuticals International, and Oceanside Pharmaceuticals, Inc. (collectively, "Valeant") respectfully submit this Memorandum of Law in support of their motion to dismiss with prejudice: (i) Direct Purchasers' First Amended Class Action Complaint, dated December 21, 2018, filed by Ahold USA, Inc. and other Direct Purchaser Plaintiffs (Dkt. 18-02641 Doc. 11) (the "DPP Complaint"); and (ii) the Amended Complaint, dated December 21, 2018, filed by The Kroger Co., Albertsons Companies, LLC, and H.E. Butt Grocery Company L.P. (Dkt. 18-cv-284 Doc. 37) (the "Kroger Complaint") (collectively, the "Complaints").[1]

## **INTRODUCTION**

Plaintiffs' assertion that Valeant participated in an antitrust conspiracy to increase the price of a generic drug is destroyed by Valeant's alleged business practice of "dramatically increasing prices" on drugs "shortly after acquiring them."[2]  According to Supreme Court and Third Circuit precedent, where, as here, the alleged facts show a possible reason for price increases other than an antitrust conspiracy (in this case, Valeant's purported independent business strategy of increasing prices), the conspiracy claim should be dismissed.

Valeant's actions are also consistent with the behavior of companies operating in a two-player market, where participants engage in a follow-the-leader business strategy.  The Third

---

[1] Valeant joins and incorporates by reference Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiffs' Overarching Conspiracy Claims filed on behalf of multiple defendants, dated February 21, 2019.  Whether or not the Court grants the motion to dismiss the overarching conspiracy claims, Valeant's independent bases described in this memorandum support dismissal of all claims asserted against Valeant.

[2] Plaintiffs cite an article that shows Valeant's increase in generic metronidazole vaginal gel prices is consistent with plaintiffs' allegation that Valeant increased drug prices for newly-acquired drugs:  "On Feb. 10 [2015], Valeant Pharmaceuticals International Inc. bought the rights to a pair of life-saving heart drugs.  The same day, their list prices rose by 525% and 212%."  "Pharmaceutical Companies Buy Rivals' Drugs, Then Jack Up the Prices," *The Wall Street Journal* (Apr. 26, 2015) (DPP Comp. ¶ 296 n.51, Exhibit B n.7).

**FILED WITH REDACTIONS - PUBLIC VERSION**

Circuit recognizes that such pricing must be analyzed through the lens of "oligopolistic rationality," which recognizes that competitors in such a market would be expected to increase, not decrease, prices. Plaintiffs have not alleged any facts that overcome their admissions showing likely alternative explanations for Valeant's price increases to a conspiracy. Therefore, plaintiffs' claims should be dismissed.

Lacking any direct evidence linking Valeant to a purported antitrust conspiracy, plaintiffs assert broad-brush allegations about the generic pharmaceutical industry and government investigations that have no relation to Valeant. Like the conclusory allegations this Court discredited in dismissing the complaint against Defendant Teligent, Inc., and unlike the allegations this Court determined could support an antitrust claim, the conclusory allegations asserted against Valeant "fall short of making plausible the contention" that Valeant participated in an antitrust conspiracy because plaintiffs:

- Do not allege that the U.S. Department of Justice served Valeant with a subpoena or any other request for documents or information in connection with an investigation of antitrust violations in the generic pharmaceutical industry (it did not) (DPP Comp. Ex. C);

- Do not allege that a grand jury served Valeant with a subpoena related to a U.S. Department of Justice criminal investigation of antitrust violations in the generic pharmaceutical industry (no grand jury did so) (DPP Comp. Ex. C);

- Do not allege that Valeant's offices were searched pursuant to a search warrant (they were not);

- Do not allege that any state served Valeant with a subpoena or civil investigative demand related to any investigation of possible antitrust violations in the generic pharmaceutical industry (no state did) (DPP Comp. Ex. C);

- Do not allege that generic metronidazole vaginal gel—the only generic pharmaceutical in the Complaints that Valeant is alleged to have sold—has been subject to a U.S. Congressional inquiry or subpoena (it has not been);[3]

---

[3] Although plaintiffs assert that Valeant received a letter from Congress about an increase in prices (DPP Comp. ¶ 296), the Congressional letter to Valeant related to price increases on two

FILED WITH REDACTIONS - PUBLIC VERSION

- Do not allege that Valeant was a member of the Generic Pharmaceutical Association ("GPhA") or any trade association in the Complaints (it was not);

- Do not allege that Valeant employed a board member of any trade association identified in the Complaints (it did not); and

- Do not allege facts that Valeant's pricing strategy for generic metronidazole vaginal gel was different from what plaintiffs allege was an independent business strategy (it was consistent with Valeant's alleged practice of increasing prices and is rational independent behavior under Third Circuit precedent).

*Compare In re Generic Pharmaceuticals Pricing Antitrust Litigation*, 338 F. Supp. 3d 404, 451 (E.D. Pa. 2018) (Rufe, J.) (Doc. 721) (dismissing conspiracy claims against Teligent).

Forcing Valeant to defend itself against a few[4] flimsy and contradictory antitrust conspiracy allegations directed at the generic drug industry—allegations that fail to satisfy basic pleading standards—will unduly expose Valeant to potentially massive expenses. Because *plaintiffs' own allegations* establish an independent, rational basis for Valeant's pricing with respect to generic metronidazole vaginal gel, all claims against Valeant should be dismissed under Supreme Court and Third Circuit precedent.

## FACTUAL ALLEGATIONS

According to the Complaints, Valeant began selling generic metronidazole vaginal gel in February 2015. (DPP Comp. ¶ 294.) Three other formulations of metronidazole are sold by other entities (not Valeant): generic metronidazole cream, generic metronidazole gel, and generic metronidazole lotion. (*See* DPP Comp. ¶ 44; Kroger Comp. ¶ 655.) Generic metronidazole vaginal gel is a generic antibacterial prescribed for "the treatment of bacterial vaginosis." (National Institutes of Health, U.S. National Library of Medicine, DailyMed Database,

of Valeant's branded drugs (and no generic drugs), increases which would be consistent with what plaintiffs allege was Valeant's "well-known" strategy of increasing drug prices. (*See* Declaration of Jay D. Smith dated February 21, 2019, Exhibit 1.)

[4] Valeant is mentioned in only 11 of the 1,081 paragraphs (or 1%) of the Kroger Complaint and in only 12 of the 515 paragraphs (or 2%) of the DPP Complaint.

3

**FILED WITH REDACTIONS - PUBLIC VERSION**

https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=526c226a-099b-4eb3-943d-c88b2763b2c1&audience=consumer.)[5]   The drug label for this drug states: "FOR INTRAVAGINAL USE ONLY.  (NOT FOR OPHTHALMIC, DERMAL, OR ORAL USE.)"

The labels for the other formulations of metronidazole show that none is a reasonable substitute for generic metronidazole vaginal gel.   Unlike metronidazole vaginal gel, metronidazole <u>cream</u> is for "topical application in the treatment of inflammatory papules and pustules of rosacea."   (National Institutes of Health, U.S. National Library of Medicine, DailyMed Database, https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=43d5e570-f359-564d-9bb4-51784ad97b6f.)   Significantly, "[i]t is for external use only."   (*Id*.)   Similarly, metronidazole <u>gel</u> (or as plaintiffs label it, "<u>jelly</u>") is "for the topical treatment of inflammatory lesions of rosacea."   (National Institutes of Health, U.S. National Library of Medicine, DailyMed Database, https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=ab3a8a2d-714a-4beb-af8a-99bc3ac3ebbe.)   It is "[n]ot for oral, ophthalmic or intravaginal use."   (*Id*.)   Finally, metronidazole <u>lotion</u> "is indicated for topical application in the treatment of inflammatory papules and pustules of rosacea."   (National Institutes of Health, U.S. National Library of Medicine, DailyMed   Database,   https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=c4e07c26-245d-3e51-6a47-fccde22334d2&audience=consumer.)   Like the other formulations other than metronidazole vaginal gel, "[i]t is for external use only."   (*Id*.)

A pharmaceutical "FOR INTRAVAGINAL USE ONLY" that is explicitly "NOT FOR OPHTHALMIC, DERMAL, OR ORAL USE" cannot be substituted for a medicinal product meant to be used on the skin (the "dermal") and, conversely, a pharmaceutical "for the topical

---

[5] The Court can take judicial notice of pharmaceutical labels because they are on the U.S. National Library of Medicine website, a subdivision of the U.S. Department of Health & Human Services.  *See Anspach v. City of Philadelphia*, 503 F.3d 256, 273, n.11 (3d Cir. 2007) ("Courts ruling on Rule 12(b)(6) motions may take judicial notice of public records.").

74033275

FILED WITH REDACTIONS - PUBLIC VERSION

treatment" that is "for external use only" and "[n]ot for . . . intravaginal use" cannot be used for the treatment of vaginal bacteria.   Plaintiffs do not allege, because they cannot, that metronidazole vaginal gel (a product only for intravaginal use) is a reasonable substitute for any other formulation of metronidazole (products that are to be used externally only) or that any other formulation of metronidazole can be substituted for metronidazole vaginal gel.   Further, plaintiffs do not allege any facts showing that the prices for generic metronidazole vaginal gel have any relation to prices for any other formulation of metronidazole.

Plaintiffs allege that during the time (prior to January 2015) when generic metronidazole vaginal gel was sold by Prasco Laboratories ("Prasco") and Sandoz, Inc. ("Sandoz"), prices for generic metronidazole vaginal gel "██████████████████."  (DPP Comp. ¶¶ 292-294; Kroger Comp. ¶ 668.)  Valeant allegedly began selling generic metronidazole vaginal gel when Prasco's license terminated in February 2015.  (DPP Comp. ¶ 292 n.50.)  According to plaintiffs, Valeant had a "well-known" "business strategy" of "price increase tactics," "dramatically raising prices," and "dramatically increasing prices" "shortly after acquiring" the rights to a drug.  (DPP Comp. ¶¶ 292 n.50, 296 & n.51; Kroger Comp. ¶ 670.)  Plaintiffs further allege that, shortly after it obtained the right to sell generic metronidazole vaginal gel, Valeant increased the prices it charged compared to the prices previously charged by others.  (DPP Comp. ¶¶ 294-296; Kroger Comp. ¶ 669.)

The Direct Purchaser Plaintiffs make only two general allegations in an attempt to tie plaintiffs' allegations of Valeant's "well-known" "business strategy" of increasing prices to a purported antitrust conspiracy: (1) Sandoz and Valeant "████████████████████████ ███████████████████████████████████████████████████ ██████████████" (DPP Comp. ¶ 292); and (2) representatives from Valeant attended three trade

FILED WITH REDACTIONS - PUBLIC VERSION

association meetings (DPP Comp. ¶ 297).[6]  From these meager assertions, the DPP Complaint concludes that no "non-collusive market factors (e.g., product shortages) can explain Defendants' artificially inflated prices" and states that an "agreement" between Sandoz and Valeant was part of an overarching conspiracy that included generic metronidazole vaginal gel. (DPP Comp. ¶¶ 298-299.)  The Direct Purchaser Plaintiffs allege an "industry-wide, overarching 'fair share' conspiracy" involving 31 generic pharmaceuticals.  (DPP Comp. ¶ 9 and DPP Comp. Ex. A.)  Under plaintiffs' conspiracy theory, "each generic drug manufacturer was entitled to its fair share of the generic drug industry 'sandbox.'" (DPP Comp. ¶ 9.)  According to plaintiffs, "achieving a fair share as to one generic drug could involve horse trading across other generic drugs.  For instance, generic drug manufacturers might give up customers on one generic drug based as a quid quo pro for customers from other generic drug manufacturers on a different generic drug." (DPP Comp. ¶ 17.)  Plaintiffs allege that Valeant sold only one of the drugs at issue.  (DPP Comp. ¶ 292.)  The DPP plaintiffs do not allege any facts about Valeant with respect to the alleged overarching conspiracy.  In particular, the DPP plaintiffs do not allege any facts showing that Valeant offered anything as a "quid pro quo" for the overarching conspiracy.

The Kroger Plaintiffs assert an overarching conspiracy and a "Metronidazole Conspiracy," which includes not only generic metronidazole vaginal gel, but also includes other forms of generic metronidazole.  (Kroger Comp. ¶¶ 812-832, 1002-1009.)  With respect to the overarching conspiracy, other than conclusorily identifying Valeant as an alleged "Additional Conspirator," the Kroger Plaintiffs do not identify any fact about Valeant.  (Kroger Comp. ¶ 817.)  Specifically, they do not allege any facts about who, how, why, or when Valeant joined an overarching conspiracy.  Plaintiffs allege no facts to support the conclusory statements that

---

[6] Two of the three meetings were of the National Association of Chain Drug Stores, Valeant's customers.  (DPP Comp. ¶ 297.)

FILED WITH REDACTIONS - PUBLIC VERSION

"each defendant" or "every defendant" "consciously committed to a common scheme," "had knowledge of the conspiracy," or "intended to join the [overarching] conspiracy." (*See* Kroger Comp. ¶¶ 814-816.)   Instead of alleging facts—as they must—they merely lob conclusory allegations that the participation of the Additional Conspirators such as Valeant "was necessary" for the overarching conspirators to maintain their price increases and the Additional Conspirators would have lowered their prices to increase market share if they had acted independently. (Kroger Comp. ¶ 817.)   This conclusion contradicts plaintiffs' allegations that Valeant's "well-known" business strategy "was dramatically increasing prices." (*See* Kroger Comp. ¶ 670.)

With respect to the "Metronidazole Conspiracy," the Kroger Plaintiffs conclusorily allege that "the agreement to increase prices on all formulations of Metronidazole was the result of collusive communications." (Kroger Comp. ¶ 672.)   Plaintiffs do not allege that generic metronidazole vaginal gel (the only product that Valeant is alleged to have sold as part of the purported conspiracy) can be substituted for any other formulation of metronidazole (as explained above, it cannot be) or that the price of one formulation has any bearing on the pricing of another formulation.   Finally, plaintiffs allege that Valeant attended two meetings of its customers' trade association, the first occurring months before Valeant began selling generic metronidazole vaginal gel and the second occurring months after Valeant's alleged first price increase, but otherwise do not allege any facts about Valeant. (Kroger Comp. ¶¶ 677-678.)

## ARGUMENT

To survive a motion to dismiss, a plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Burch v. Millberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011) (affirming dismissal), *cert. denied*, 566 U.S. 921 (2012).   The allegations must

74033275

FILED WITH REDACTIONS - PUBLIC VERSION

plausibly suggest that "the defendant was a party to a contract, combination . . . or conspiracy" which requires "some form of concerted action."  *Id.* at 221 (quoting 15 U.S.C. § 1 and *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 315 (3rd Cir. 2010)) (internal quotation marks omitted).  Allegations that competitors increased prices cannot sustain a cause of action without additional factual allegations.[7]  *Radio Music License Comm., Inc. v. SESAC, Inc.*, 29 F. Supp. 3d 487, 497 (E.D. Pa. 2014) (dismissing price-fixing claims because the increase in prices was not accompanied by plus factors). *See also Superior Offshore Int'l, Inc. v. Bristow Group*, 490 F. App'x 492, 497 (3d Cir. 2012) (affirming summary judgment because "raising prices simultaneously" only supports antitrust claim if plus factors exist).  Plaintiffs fail to allege any direct or circumstantial evidence upon which this Court can plausibly infer that Valeant knowingly joined or agreed to participate in a conspiracy.  Accordingly, both Complaints should be dismissed.

## I.     PLAINTIFFS' ALLEGATIONS SUPPORT DISMISSAL

Plaintiffs do not allege any facts showing that Valeant communicated with any competitor about prices for any product or about generic metronidazole vaginal gel.  Instead, plaintiffs base their purported conspiracy on the allegation that Valeant and Sandoz both increased prices for generic metronidazole vaginal gel.  (DPP Comp. ¶ 294; Kroger Comp. ¶ 669.)  Although plaintiffs allege that Valeant had a few opportunities to communicate with its competitors at presumptively lawful meetings, they fail to identify any facts to support an

---

[7] *See, e.g.*, *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 445 (9th Cir. 1990), *cert. denied*, 500 U.S. 959 (1991) ("We also cannot agree that, without more, the conspiratorial nature of the price restorations is indicated by the fact that the  price hikes were 'too high.'  Were we to permit such a theory, few pricing decisions would be immune from antitrust scrutiny.  Any unhappy buyer in a market experiencing a general increase in prices could bring an antitrust action against the sellers, arguing that the conspiratorial nature of the price increase is indicated by the fact that the increase was 'too high.'").

74033275

FILED WITH REDACTIONS - PUBLIC VERSION

inference that Valeant actually communicated about prices or about metronidazole vaginal gel, as they must to state a viable claim.  (DPP Comp. ¶ 297; Kroger Comp. ¶ 677-678.)

A.    **Because Plaintiffs Allege Facts Showing a Reason Exists For Valeant's Price Increase Other Than a Conspiracy, All Claims Should be Dismissed**

"[A] claim of conspiracy predicated on parallel conduct should be dismissed if 'common economic experience,' or the facts alleged in the complaint itself, show that independent self-interest is an 'obvious alternative explanation' for defendants' common behavior."  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 326 (affirming dismissal of antitrust conspiracy claims because the defendants had independent incentives to take action); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567-69 (2007) (reinstating dismissal of conspiracy claims because parallel conduct had "an obvious alternative explanation" to conspiracy).  By alleging that Valeant had a "well-known" "business strategy" of "dramatically increasing prices" and "dramatically raising prices" using "price increase tactics" (DPP Comp. ¶ 292 n.50, ¶ 296 n. 51; Kroger Comp. ¶ 670), plaintiffs themselves provide "an obvious alternative explanation" for Valeant's price increases.  As a result, the claims against Valeant should be dismissed.  *E.g. Twombly*, 550 U.S. at 567-69; *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 326.

In addition, where, as here, an oligopoly exists,[8] independent conduct may look like horizontal price fixing because a competitor is likely to match any increased price of the other

---

[8] An oligopoly exists for the generic metronidazole vaginal gel market.  "An oligopoly is defined as 'control or domination of a market by a few large sellers, creating high prices and low output similar to those found in a monopoly.'" *In re Wireless Telephone Services Antitrust Litigation*, 385 F. Supp. 2d 403, 421 (S.D.N.Y. 2005) (quoting *Black's Law Dictionary* 1120 (8th ed. 2004)).  To determine whether an oligopoly exists, the market must be defined by analyzing whether products are "functionally interchangeable with their equivalent counterparts."  *See U.S. Anchor Mfg., Inc. v. Rule Industries, Inc*., 7 F.3d 986, 995-96 (11th Cir. 1993) (one product was not in the same market as other products because consumers would not switch from one product to the other), *cert. denied*, 512 U.S. 1221 (1994).  Plaintiffs allege that only two companies manufactured generic metronidazole vaginal gel after Valeant entered the market.  (DPP Comp. ¶ 292; Kroger Comp. ¶ 667.)  In spite of that, the Kroger Plaintiffs assert that Valeant entered a

FILED WITH REDACTIONS - PUBLIC VERSION

competitor and not attempt to lower prices to compete.  *See, e.g., Valspar Corp. v. E. I. du Pont de Nemours & Co.*, 873 F.3d 185, 191 (3d Cir. 2017).  "This 'oligopolistic rationality' can cause supracompetitive prices because it discourages price reductions while encouraging price increases."  *Id.*  Oligopolistic rationality is a "common economic experience" recognized by the Third Circuit that offers an obvious alternative explanation for Valeant's increased prices that requires dismissal of the claims against Valeant. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 326 (conspiracy claim should be dismissed where "'common economic experience' . . . show[s] . . . an 'obvious alternative explanation'").

## B.    Plaintiffs Fail To Allege Facts of Plus Factors

Because plaintiffs themselves allege an alternate explanation to a conspiracy for Valeant's price increases, the claims should be dismissed and no further analysis is necessary. Even if the Court were to analyze whether plaintiffs adequately allege plus factors in addition to parallel conduct, plaintiffs' claims against Valeant should be dismissed.

Where plaintiffs allege parallel conduct as the basis for claiming a conspiracy existed, plaintiffs must allege "parallel conduct plus 'a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.'"  *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, 338 F. Supp. 3d at 440.  These "plus

---

conspiracy for all formulations of metronidazole.  (Kroger Comp. ¶¶ 1003-04.)  As explained in the fact section above, metronidazole vaginal gel is not equivalent to any other formulation of metronidazole because metronidazole vaginal gel is to be applied only vaginally to treat bacterial vaginosis and is not to be applied to the skin, while the other formulations of metronidazole are not to be applied internally and are to treat rosacea.  Therefore, a pharmacist cannot substitute any other formulation of metronidazole for metronidazole vaginal gel and cannot substitute generic metronidazole vaginal gel for any other formulation of metronidazole.  *See In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig*., 64 F. Supp. 3d 665, 673 (E.D. Pa. 2014) (a pharmacy cannot substitute a generic drug unless "the two drugs are also pharmaceutically equivalent," including "the same route of administration").  In other words, only Valeant and Sandoz compete in the generic metronidazole vaginal gel market.  Because only two sellers compete, the market was an oligopoly.

factors" are: motive, actions contrary to self-interest, and evidence implying a traditional conspiracy. *Id.* at 448. But as the Third Circuit has explained, where, as here, "a small number of sellers or buyers of a particular product dominate the market," courts "de-emphasize the first two types of evidence [motive and actions contrary to self-interest], which 'largely restate [that] phenomenon of interdependence,' … often called 'conscious parallelism.'" *Lifewatch Services Inc. v. Highmark Inc.*, 902 F.3d 323, 333 (3rd Cir. 2018) (quoting *Valspar Corp.*, 873 F.3d at 193). Instead, the focus is on the third, which is non-economic evidence that an actual agreement existed. *Id.*

### 1.    Plaintiffs Fail to Allege Motive

Plaintiffs have not identified any motive for Valeant joining an alleged conspiracy other than that Valeant hoped to increase its profits. That does not support a finding that Valeant had a motive to conspire because "'[i]n a free capitalistic society, all entrepreneurs have a legitimate understandable motive to increase profits' and without a 'scintilla of evidence of concerted, collusive conduct,' this motive does not on its own constitute evidence of a 'plus factor.'" *Burtch*, 662 F.3d at 229 (affirming dismissal of conspiracy claim) (quoting *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 137 (3d Cir. 1999)).

### 2.    Valeant's Behavior was not Against Its Self-Interest and was Rational

Plaintiffs' conclusory allegations that Valeant's price increases were against its self-interest (DPP Comp. ¶ 298; Kroger Comp. ¶¶ 671-672) is inconsistent with the Third Circuit precedent that explains self-interested, rational conduct in a market such as the generic metronidazole vaginal gel market is to increase, not decrease prices:

> This "oligopolistic rationality" can cause supracompetitive prices because it discourages price reductions while encouraging price increases. A firm is unlikely to lower its price in an effort to win market share because its competitors will quickly learn of that reduction and match it, causing the first mover's profits to decline and a subsequent decline in the overall profits of the industry. [*In re Flat*

11

**FILED WITH REDACTIONS - PUBLIC VERSION**

> *Glass Antitrust Litig.*, 385 F.3d 350, 359 (3d Cir. 2004).] Similarly, if a firm announces a price increase, other market participants will know that "if they do not increase their prices to [the first-mover's] level, [the first-mover] may be forced to reduce its price to their level. Because each of the other firms know this, each will consider whether it is better off when all are charging the old price or [the new one]. They will obviously choose [the new price] when they believe that it will maximize industry profits." *Id.* (quoting [Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* 207-208 (2d ed. 2000)]).

*Valspar*, 873 F.3d at 191.  As plaintiffs admit, information about generic pharmaceuticals pricing is published (DPP Comp. ¶ 99) thereby making the two company market for generic metronidazole vaginal gel particularly susceptible to oligopolistic rational behavior because firms can observe one-another's prices.  Under such circumstances, as explained by the Third Circuit, the self-interested, rational action would have been for Valeant to increase its prices.  *See Valspar*, 873 F.3d at 191.  Therefore, the second plus factor supports dismissal.

### 3.    Plaintiffs Fail to Allege Traditional Conspiracy Facts

Plaintiffs fail to allege "non-economic evidence that there was an actual, manifest agreement not to compete, which may include proof that the defendants got together and exchanged assurances of common action or otherwise adopted a common plan even though no meetings, conversations, or exchanged documents are shown."  *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, 338 F. Supp. 3d at 449 (citations and quotations omitted).  The only facts alleged about Valeant other than that it increased its prices are that it attended two or three trade association meetings.  (DPP Comp. ¶ 297 (three meetings); Kroger Comp. ¶ 677-678 (two meetings).)  However, "'[p]articipation in a trade group association and/or attending trade group meetings, even those meetings where key facets of the conspiracy allegedly were adopted or advanced, are not enough on their own to give rise to the inference of agreement to the conspiracy.'"  *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, 338 F. Supp. 3d at 439 (quoting *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 722 (E.D. Pa.

74033275

FILED WITH REDACTIONS - PUBLIC VERSION

2011)); *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 349 (affirming dismissal because allegations "that the brokers had an opportunity to conspire . . . do not plausibly imply that each broker acted other than independently"); *In re Chocolate Confectionary Antitrust Litig.*, 999 F. Supp. 2d 777, 804 (M.D. Pa. 2014) (rejecting "the suggestion that the contemporaneous presence of defendants' officers at a trade association meeting permits an inference of conspiracy" and granting summary judgment), *aff'd,* 801 F.3d 383 (3d Cir. 2015); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007) ("Attendance at industry trade shows and events is presumed legitimate and is not a basis from which to infer a conspiracy, without more.").

Unlike the facts that this Court determined could support a cause of action, plaintiffs (1) do not allege that Valeant was a member of a trade association (it was not), (2) do not allege Valeant had any representative on the board of any trade association (it did not), (3) do not allege Valeant received a subpoena or other request for information related to a state or federal, criminal or civil government antitrust investigation of the generic pharmaceutical industry (it has not), and (4) do not allege that generic metronidazole vaginal gel has been the subject of a U.S. Congressional inquiry or subpoena (it has not been).  *Compare In re Generic Pharmaceuticals Pricing Antitrust Litigation*, 338 F. Supp. 3d at 449-451.  In other words, plaintiffs do not allege a non-economic fact (the third plus factor) that supports an inference that Valeant entered an actual, manifest agreement not to compete.  As such, plaintiffs' claims should be dismissed.

C.    **Plaintiffs Fail to Connect Valeant to a Conspiracy**

In essence, plaintiffs allege that because one defendant's employees have pled guilty to violating Section 1 of the Sherman Act related to drugs that Valeant does not and has never sold, Valeant and generic metronidazole vaginal gel must have been in a conspiracy too.  That kind of reasoning is insufficient to sustain a conspiracy claim.  *See, e.g., In re Chocolate Confectionary*

13

FILED WITH REDACTIONS - PUBLIC VERSION

*Antitrust Litig.*, 801 F.3d at 403 (affirming summary judgment).  As the Third Circuit explained, "[a] conspiracy elsewhere, without more, generally does not tend to prove a domestic conspiracy…. To hold otherwise would sanction the use of unabashed propensity reasoning—the fallacy that 'if it happened there, it could have happened here.'"  *Id*.  Plaintiffs offer no factual allegation connecting Valeant to the purported overarching conspiracy or to any other conspiracy.  Instead, plaintiffs use the faulty reasoning of "it happened with those defendants on those drugs, so it could have happened with Valeant and generic metronidazole vaginal gel." That is insufficient and the Court should dismiss the claims against Valeant.  *See, e.g.*, *Winn-Dixie Stores, Inc. v. Eastern Mushroom Mktg. Coop.*, No. 15-6480, 2019 WL 130535, at *3-5 (E.D. Pa. Jan. 8, 2019) (dismissing overarching conspiracy claim because plaintiffs alleged defendants participated in a conspiracy but did not provide "further factual matter specifying [defendants'] participation in the alleged price fixing"); *Precision Assocs. v. Panalpina World Transport (Holding) Ltd.*, No. 08-CV-00042, 2011 WL 7053807, at *27-30 (E.D.N.Y. Jan. 4, 2011) (dismissal because plaintiffs did not allege that "each of the defendants was aware of and committed to the essential purpose of the overarching conspiracy"), *R&R adopted*, No. 08-00042, 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012).

## II.   KROGER PLAINTIFFS' ALLEGED METRONIDAZOLE CONSPIRACY FAILS

In addition to the reasons explained above why all claims should be dismissed, the Kroger Plaintiffs' allegation that Valeant conspired with other defendants to set prices of formulations of generic metronidazole other than metronidazole vaginal gel should be dismissed because plaintiffs do not allege that the defendants compete.  Where a plaintiff fails to allege "any facts supportive of an inference that the defendants are competitors," an antitrust conspiracy claim should be dismissed.  *See Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 747 (D. Md. 1997) (dismissing claim).  As explained in the fact section and in footnote 9, no other formulation of

14

FILED WITH REDACTIONS - PUBLIC VERSION

metronidazole can be substituted for metronidazole vaginal gel.  The Kroger Plaintiffs do not allege that the defendants that sell formulations of generic metronidazole other than metronidazole vaginal gel compete with Valeant.  The Kroger Plaintiffs merely and conclusorily allege that "the agreement to increase prices on all formulations of Metronidazole was the result of collusive communications."  (Kroger Comp. ¶ 672.)  The Kroger Plaintiffs do not allege why such an agreement would be plausible where the products do not compete.  Because plaintiffs do not allege that the defendants compete, the Kroger Plaintiffs' allegation that a conspiracy exists for all formulations of metronidazole should be dismissed.  *See Zachair*, 965 F. Supp. at 747.

## III.    THE COURT SHOULD DISMISS VPI

Plaintiffs fail to allege a single fact about Valeant Pharmaceuticals International ("VPI") that supports a claim against it.  VPI is not alleged to have sold—and it did not sell—generic metronidazole vaginal gel or any other drug at issue.  Plaintiffs simply define "Valeant" to include VPI without alleging any facts to support a claim against VPI.  That is plainly inadequate and the claims against VPI should be dismissed for this reason in addition to the others in this brief.  *See In re Generic Pharma. Pricing Antitrust Litig.*, 338 F. Supp. 3d at 438 ("'The Court properly looks for more than mere repetitive generic reference to 'Defendants' tacked on to a conclusory verb form to connect an individual defendant to an actual agreement in an antitrust conspiracy.'") (quoting *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d at 719).

## CONCLUSION

For the reasons set forth above, Valeant respectfully requests that this Court dismiss all claims against Valeant in both Complaints with prejudice; and such other and further relief as this Court deems just and proper.

15

74033275

**FILED WITH REDACTIONS - PUBLIC VERSION**

Dated:  New York, New York
        February 21, 2019

**NORTON ROSE FULBRIGHT US LLP**

By: */s/ Robin D. Adelstein*

Robin D. Adelstein
Mark A. Robertson
Gerald A. Stein
Matthew C. Lamb
1301 Avenue of the Americas
New York, NY 10019-6022
Tel.: 212-318-3000
robin.adelstein@nortonrosefulbright.com
mark.robertson@nortonrosefulbright.com
gerald.stein@nortonrosefulbright.com
matthew.lamb@nortonrosefulbright.com
*Attorneys for Defendants Valeant*
*Pharmaceuticals North America LLC,*
*Valeant Pharmaceuticals International,*
*and Oceanside Pharmaceuticals, Inc.*

74033275

**FILED WITH REDACTIONS - PUBLIC VERSION**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this 21st day of February 2019, I caused to be filed electronically on the Court's ECF System (i) Valeant and Oceanside's Motion to Dismiss Direct Purchasers' First Amended Complaint and Kroger Plaintiffs' Amended Complaint; (ii) the Memorandum of Law in Support of Defendants Valeant and Oceanside's Motion to Dismiss Direct Purchasers' First Amended Complaint and Kroger Plaintiffs' Amended Complaint (with redactions required by the Protective Order); (iii) the Declaration of Jay D. Smith in Support of Valeant and Oceanside's Motion to Dismiss Direct Purchasers' First Amended Complaint and Kroger Plaintiffs' Amended Complaint; and (iv) the Proposed Order.  Notice of this filing will be sent to all counsel of record by operation of the ECF System.

An unredacted copy of the foregoing is being served electronically upon all counsel of record via electronic mail, and via United States Mail to the Court and Clerk on the 21st day of February, 2019.

Dated: February 21, 2019

*/s/ Matthew C. Lamb*
Matthew C. Lamb

74033275