UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | : : : : | MDL 2724 16-MD-2724 |
| THIS DOCUMENT RELATES TO: | : : | |
| *Humana Inc. v. Actavis Elizabeth, LLC, et al.* | : : | 18-cv-3299 |
| *Marion Diagnostic Center, LLC, et al. v. McKesson Corp., et al.* | : : : | 18-cv-4137 |
| *In re: State Attorneys General Litigation* | : : | 17-cv-3768 |
| *Ahold USA Inc., et al. v. Actavis Holdco U.S., Inc., et al.* | : : | 18-cv-2641 |
| *The Kroger Co., et al. v. Actavis Holdco U.S., Inc., et al.,* | : : | 18-cv-284 |
| *West Val Pharmacy, et al. v. Actavis Holdco U.S., Inc., et al.* | : : : | 18-cv-2533 |
| *1199SEIU National Benefit Fund, et al. v. Actavis Holdco U.S., Inc., et al.* | : : : : | 18-cv-2401 |

**DEFENDANT GLENMARK PHARMACEUTICALS INC., USA'S
MEMORANDUM OF LAW IN SUPPORT OF ITS INDIVIDUAL MOTION TO DISMISS
<u>PLAINTIFFS' SHERMAN ACT CLAIMS IN THE MULTI-DRUG COMPLAINTS</u>**

## **TABLE OF CONTENTS**

Page

INTRODUCTION ..........................................................................................................................1

LEGAL ARGUMENT ...................................................................................................................3

I. Plaintiffs' Overarching Conspiracy Allegations Are Defective As To Glenmark. ............3

    A. Plaintiffs Do Not Plausibly Connect Glenmark to Any Alleged Overarching Conspiracy. .......................................................................................4

        1. Interdependence Is Missing As to Glenmark Because There Are No Well-Pled Factual Allegations That The Success of the Overarching Conspiracy Depended on Glenmark's Participation. ............4

        2. Plaintiffs Do Not Allege that Glenmark Followed the "Rules of the Road" to Carry Out the Alleged Conspiracy. ............................................6

    B. Plaintiffs' Allegations Concerning Circumstantial Evidence of an Overarching Conspiracy Are Insufficient as to Glenmark. ..................................6

II. Plaintiffs' Drug-Specific Allegations in the Multi-Drug Complaints Are Insufficient Because They Do Not Plausibly Plead Parallel Conduct..............................12

CONCLUSION ............................................................................................................................15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*BanxCorp v. LendingTree LLC*,
  2011 WL 541807 (D.N.J. Feb. 7, 2011) .................................................................................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................... 12, 14, 15

*In re Chocolate Confectionary Antitrust Litig.*,
  801 F.3d 383 (3d Cir. 2015) ................................................................................................7, 12

*Foster v. City of Philadelphia*,
  2013 WL 12149716 (E.D. Pa. Sept. 12, 2013) .........................................................................9

*In re Generic Pharms. Pricing Antitrust Litig.*,
  338 F. Supp. 3d 404 (E.D. Pa. 2018) ......................................................................................13

*Iqbal v. Ashcroft*,
  556 U.S. 662 (2009) ................................................................................................................12

*McDermott v. Clondalkin Grp., Inc.*,
  649 F. App'x 263 (3d Cir. 2016) ..............................................................................................9

*Monsanto Co. v. Spray-Rite Svc. Corp.*,
  465 U.S. 752 (1984) ................................................................................................................12

*In re Optical Disk Drive Antitrust Litig.*,
  2014 WL 3378336 (N.D. Cal. July 10, 2014) ..........................................................................3

*In re OSB Antitrust Litig.*,
  2007 WL 2253419 (E.D. Pa. Aug. 3, 2007) .............................................................................3

*In re Processed Egg Prods. Antitrust Litig.*,
  2011 WL 4465355 (E.D. Pa. Sept. 26, 2011) ...........................................................................3

*Superior Offshore Int'l, Inc. v. Bristow Grp. Inc.*,
  738 F. Supp. 2d 505 (D. Del. 2010), *order amended on reconsideration*, 2010
  WL 11470613 (D. Del. Dec. 1, 2010), *aff'd*, 490 F. App'x 492 (3d Cir. 2012) .......................8

**INTRODUCTION**

Plaintiffs' attempt in the Multi-Drug Complaints to allege claims against Glenmark Pharmaceuticals Inc., USA ("Glenmark") based on a purported overarching price-fixing and market allocation conspiracy has no plausible basis.[1]  The various Complaints seek to hold Glenmark jointly and severally liable for an alleged, expansive conspiracy involving more than 30 drugs despite that Glenmark is only alleged to have conspired with respect to at most two of those drugs, Fosinopril-Hydrochlorothiazide ("Fosi-HCTZ") and/or Pravastatin.  Indeed, in both the State's CAC and the Kroger AC, Glenmark is only alleged to have participated in a purported conspiracy involving one of the drugs at issue.

Given its alleged involvement with, at most, only two of the drugs implicated by Plaintiffs' overarching conspiracy claims, it is not surprising that Plaintiffs' allegations in the Multi-Drug Complaints against Glenmark are sparse at best.  Plaintiffs fail to allege "interdependence" as to Glenmark, i.e., that success of the overarching conspiracy depended on Glenmark's participation.  Nor do Plaintiffs allege that Glenmark implemented any of the methods, or followed any of the "rules of the road," that Plaintiffs assert were used to carry out the alleged overarching conspiracy.  The Multi-Drug Complaints likewise fail to allege direct evidence demonstrating Glenmark's participation in any overarching conspiracy.

---

[1]  The Multi-Drug Complaints include: Direct Purchaser Plaintiffs' Amended Class Action Compl. ("DPP ACAC") (Glenmark individual Fosi-HCTZ conspiracy; overarching conspiracy involving 21 drugs); End Payer Class Action Compl. ("EPP CAC") (Glenmark individual Fosi-HCTZ conspiracy; overarching conspiracy involving 19 drugs); Indirect Reseller Plaintiffs' Amended Class Action Compl. ("IRP ACAC") (same); The Kroger Plaintiffs' Amended Compl. ("Kroger AC") (Glenmark individual Fosi-HCTZ and Pravastatin conspiracies; overarching conspiracies involving 40 drugs); The Marion Plaintiffs' First Amended Compl. ("Marion AC") (Glenmark individual Fosi-HCTZ conspiracy; overarching conspiracy involving "all generic drugs"); Humana, Inc.'s Amended Compl. ("Humana AC") (Glenmark individual Pravastatin conspiracy; overarching conspiracy involving 27 drugs); and the Plaintiff States' Consolidated Amended Compl. ("States' CAC") (Glenmark individual Fosi-HCTZ conspiracy; overarching conspiracy involving 15 drugs).

All that Plaintiffs are left with as to Glenmark are circumstantial allegations from which Plaintiffs ask the Court to infer Glenmark's participation in an alleged overarching conspiracy. On that plainly insufficient basis, they seek to impose upon Glenmark the enormous risk of joint and several liability for alleged price fixing and market allocation with respect to potentially dozens of drugs that Glenmark did not even sell.  First, Plaintiffs rely on the circumstantial allegation that, from time-to-time, certain Glenmark employees talked with employees of other generic drug manufacturers over the phone and at routine trade association meetings.  Plaintiffs do not allege any facts as to what was discussed in those communications, e.g., whether they talked about politics, sports, mutual friends' weddings, legitimate business matters, or improperly about prices.  Nevertheless, Plaintiffs assert in conclusory fashion "on information and belief" that Glenmark "presumably" conspired through these communications.  Second, Plaintiffs rely on statements from annual reports and investor communications during the relevant time period noting that Glenmark reported strong growth and rising revenues.  These allegations are hardly sufficient to plausibly establish that Glenmark participated in any conspiracy, much less the sprawling overarching conspiracy Plaintiffs posit.  Consequently, Plaintiffs' overarching conspiracy claims against Glenmark should be dismissed.

Plaintiffs' individual drug-specific conspiracy allegations against Glenmark in the Multi-Drug Complaints, whether made in support of a stand-alone claim or in support of the claimed overarching conspiracy, fail as a matter of law for additional reasons.  Under the standards announced by this Court in its opinion on the Group 1 motions to dismiss, the States' and Kroger's stand-alone claims pertaining to Fosi-HCTZ, as well as Kroger's stand-alone Pravastatin claim, do not plausibly allege parallel conduct, which is an essential threshold element of a Section 1 claim predicated on circumstantial evidence.  And the drug-specific

conspiracy allegations contained in all but one of the Multi-Drug Complaints as support for Plaintiffs' alleged overarching conspiracies suffer from the same flaw. Dismissal of these claims against Glenmark is warranted on this basis as well.

## LEGAL ARGUMENT

**I.        Plaintiffs' Overarching Conspiracy Allegations Are Defective As To Glenmark.**

To state a claim for an overarching antitrust conspiracy, Plaintiffs must plead facts sufficient to demonstrate that individual drug-specific alleged conspiracies were "interdependent," and that each Defendant involved in the individual drug-specific conspiracies was aware of and joined in the alleged overarching conspiracy. (Defs.' Memo. of Law in Support of Their Mot. to Dismiss Pls.' Overarching Conspiracy Claims ("Joint Brief") at 2-3, 5, 9-11, 20-23.) As explained in the Joint Brief, which Glenmark incorporates by reference, Plaintiffs' Multi-Drug Complaints fail to meet these fundamental requirements, and their overarching conspiracy claims should be dismissed as a result. (*Id.* at 6-9, 11-19, 23-27.)

Plaintiffs' overarching conspiracy claims are particularly deficient as to Glenmark. To state a valid claim, Plaintiffs must include in their Complaints allegations that tie Glenmark to any alleged conspiracy. *BanxCorp v. LendingTree LLC*, 2011 WL 541807, at *7 (D.N.J. Feb. 7, 2011). Unless the Complaints "include allegations specific to [Glenmark] alleging [Glenmark's] role in the alleged conspiracy," and "make allegations that plausibly suggest that [Glenmark] participated in the conspiracy," dismissal is required. *In re Optical Disk Drive Antitrust Litig.*, 2014 WL 3378336, at *4 (N.D. Cal. July 10, 2014) (citation and quotation marks omitted); *see also In re OSB Antitrust Litig.*, 2007 WL 2253419, at *5 (E.D. Pa. Aug. 3, 2007) ("[T]he plaintiff must allege that each individual defendant joined the conspiracy and played some role in it."); *In re Processed Egg Prods. Antitrust Litig.*, 2011 WL 4465355, at *7 (E.D. Pa. Sept. 26, 2011) (complaint must "delineate[] to some sufficiently specific degree" that each "defendant

3

purposefully joined and participated in the conspiracy"). Because such allegations are missing here, Plaintiffs' overarching conspiracy claims against Glenmark should be dismissed.

### A. Plaintiffs Do Not Plausibly Connect Glenmark to Any Alleged Overarching Conspiracy.

Plaintiffs' attempt to connect Glenmark to the alleged overarching conspiracy fails as a matter of law. Collectively, the Complaints discuss Glenmark's involvement with at most two drugs—Fosi-HCTZ and Pravastatin—out of the more than 30 total drugs that the Multi-Drug Complaints allege comprise the overarching conspiracy. Despite the complete absence of involvement by Glenmark in nearly all of the 30-plus purported drug-specific conspiracies, and Plaintiffs' concession that Glenmark was an "[a]dditional" rather than "[c]ore" conspirator (*e.g.*, Kroger AC ¶ 22), Plaintiffs appear to claim that the Court should infer Glenmark's participation in an overarching conspiracy because such participation was supposedly necessary to accomplish a part of the conspiracy—i.e., to increase prices on the two drugs which Glenmark manufactures. (*E.g., id.* ¶ 817 ("[T]he participation of the Additional Conspirators …was necessary to increase the prices of the generic drugs that they manufactured.")). This boilerplate allegation, which is unsupported by any facts, is insufficient to state an overarching conspiracy claim against Glenmark. And Plaintiffs' failure to allege that Glenmark implemented the methods that supposedly furthered the alleged overarching conspiracy is equally fatal to Plaintiffs' claims.

#### 1. Interdependence Is Missing As to Glenmark Because There Are No Well-Pled Factual Allegations That The Success of the Overarching Conspiracy Depended on Glenmark's Participation.

In the context of an overarching conspiracy claim, Plaintiffs must establish "interdependence," i.e., that success of the overarching conspiracy is dependent on a corresponding success of any individual drug-specific conspiracy. (Joint Brief at 20-23.) As the

4

Joint Brief notes, Plaintiffs have not met their pleading burden on this essential element, and that flaw dooms the overarching conspiracy claims as to all Defendants. (*Id.* at 23-27.)

The shortcomings of Plaintiffs' overarching conspiracy claims are even more stark as to Glenmark. Search as it might, nowhere in the Multi-Drug Complaints will the Court find allegations addressed to Glenmark that would plausibly establish the requisite interdependence. (*E.g.*, Kroger AC ¶¶ 818-826.) There are no allegations, for example, that Glenmark:

- Agreed to concede market share for one generic drug in exchange for another company agreeing to concede market share for a second generic drug, or vice versa (*e.g.*, *id.* ¶ 819; *see also id.* ¶¶ 820-821);

- Declined to offer a competitive bid, so as not to undermine an agreed price increase, or was "punish[ed]" by other alleged conspirators for failing to do so (*id.* ¶ 822);

- Coordinated price increases with other companies that manufactured other generic drugs, so that price increases across drugs would be staggered and the alleged overarching conspiracy would be concealed (*id.* ¶ 823);

- Benefitted from any agreement to increase prices, on the theory that increased prices reduced output, which in turn reduced the demand and cost for raw materials used to manufacture the drugs (*id.* ¶ 824);

- Discontinued production of any drug after a price increase to avoid excess capacity, or benefitted from another company discontinuing production in this way (*id.* ¶ 825); or

- Manufactured a drug that was subject to "demand-side substitution," i.e., the drug was used for a similar purpose as another drug, so that a price increase for that one drug was relevant to the success of price increases for similar drugs (*id.* ¶ 826).

While Plaintiffs' allegations do not suffice to establish interdependency as to any Defendant (Joint Brief at 20-27), they have no factual basis whatsoever to assert that the success of the overarching conspiracy depended in any way on Glenmark's participation. Plaintiffs' overarching conspiracy claims against Glenmark should be dismissed for this reason alone.

### 2. Plaintiffs Do Not Allege that Glenmark Followed the "Rules of the Road" to Carry Out the Alleged Conspiracy.

Plaintiffs likewise do not allege Glenmark has implemented any of the methods—the "rules of the road," as Plaintiffs call them (*e.g.*, States' CAC ¶ 91; EPP CAC ¶ 103, 124)—that Defendants purportedly used to carry out the alleged conspiracy. This defect too requires dismissal of the Plaintiffs' overarching conspiracy claims against Glenmark. Setting aside impermissible group pleading conclusory allegations that cannot be taken as true under controlling law (Joint Brief at 11), there are no allegations that Glenmark:

- "[W]alked away" from a customer, in order to allow a competitor to reach its agreed-upon share for a drug (*e.g.*, States' CAC ¶ 99; IRP ACAC ¶ 70; Humana AC ¶ 266; *see also* EPP CAC ¶ 7);

- Increased its own share for a drug by submitting "a supra-competitive bid at an amount slightly less than the original competitor" (States' CAC ¶ 99; *see also* Humana AC ¶ 266);

- Traded a customer in one drug market for another customer in a different drug market, "in an effort to arrive at a more global . . . outcome" (States' CAC ¶ 101; *see also* IRP ACAC ¶ 70; EPP CAC ¶ 125; Humana AC ¶¶ 265, 267); or

- "Prioritze[d] gain[ing] market share over" maintaining its agreed-upon share and changed course after it was "spoken to" by competitors about this strategy (States' CAC ¶ 107; *see also* IRP ACAC ¶ 70; EPP CAC ¶ 125).

Because Plaintiffs have not alleged in their Multi-Drug Complaints any factual content that could plausibly establish that Glenmark implemented the methods that Plaintiffs posit were used to carry out the alleged overarching conspiracy, the overarching conspiracy claims fail as to Glenmark and should be dismissed.

### B. Plaintiffs' Allegations Concerning Circumstantial Evidence of an Overarching Conspiracy Are Insufficient as to Glenmark.

It is beyond dispute that Plaintiffs do not plead any direct evidence of an overarching conspiracy among Defendants, much less one involving Glenmark. Thus, Plaintiffs must resort

6

to circumstantial evidence to attempt to support their ambitious industry-wide conspiracy theory. *See In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383, 395-96 (3d Cir. 2015) (in the absence of direct evidence, a conspiracy may be proved through circumstantial evidence that tends to exclude the possibility of unilateral action).  Plaintiffs' Multi-Drug Complaints offer the following four categories of circumstantial evidence from which they ask the Court to infer an overarching conspiracy: (1) government investigations of various generic drug manufacturers;[2] (2) certain economic and structural factors that Plaintiffs say make the generic drug industry susceptible to collusion;[3] (3) the fact that communications occurred, over the internet, by telephone, email, or text message, and at routine industry trade shows and industry dinners, between employees of various generic drug manufacturers;[4] and (4) investor communications reporting on drug price increases and/or companies' strong financial performance across a wide range of generic products and geographies.[5]

Plaintiffs' allegations with respect to the first two categories of circumstantial evidence—government investigations and industry structure—do not reference Glenmark.  There is no allegation that Glenmark is a focus of the DOJ's investigation, and the criminal guilty pleas entered by executives from another company, Heritage, concern two drugs (Glyburide and

---

[2]      *E.g.*, DPP ACAC ¶¶ 8, 25-34, 35(1), 121; DPP ACAC Exhibits B and C; Marion AC ¶¶ 3-4, 43-48, 51-52; Kroger AC ¶¶ 3-6, 11, 13, 17, 122-131, 140-143; Humana AC ¶¶ 4-8, 137-172; States' AC ¶¶ 1, 7; EPP CAC ¶¶ 16-18, 23-31.

[3]      *E.g.*, DPP ACAC ¶¶ 13, 35(3), 129-131; DPP ACAC Exhibit F; Marion AC ¶¶ 42; Kroger AC ¶¶ 15-16, 20, 227-228, 788-794, 796; Humana AC ¶¶ 135-136; EPP CAC ¶¶ 10-12.

[4]      *E.g.*, DPP ACAC ¶¶ 12, 35(2), 118-120, 123-127; DPP ACAC Exhibits D and E; Marion AC ¶¶ 49, 52-53; Kroger AC ¶¶ 19, 145-176, 815; Humana AC ¶¶ 3, 173-203; States' AC ¶¶ 9, 13, 76-88, 93-95; EPP CAC ¶¶ 13-14, 100, 128-144; IRP ACAC ¶¶ 69, 71-72.

[5]      *E.g.*, DPP ACAC ¶ 35(4); DPP ACAC Exhibit G; Kroger AC ¶¶ 177-226; Humana AC ¶¶ 204-253.

Doxycycline) that Glenmark is not alleged to have sold.[6]  Further, simply saying that the State AGs have filed a lawsuit alleging an overarching drug conspiracy lends no factual plausibility to the conclusion that Glenmark was a party to that conspiracy or that those allegations have any merit.  *See Superior Offshore Int'l, Inc. v. Bristow Grp. Inc.*, 738 F. Supp. 2d 505, 517 (D. Del. 2010), *order amended on reconsideration*, 2010 WL 11470613 (D. Del. Dec. 1, 2010), *aff'd*, 490 F. App'x 492 (3d Cir. 2012).

The other two types of circumstantial evidence that Plaintiffs purport to allege in support of their overarching conspiracy claims—competitor communications and investor communications—include only passing references to general conduct by Glenmark and *contain no substance* about anticompetitive conduct in particular.  As such, these allegations fare no better in stating a claim against Glenmark and, in any event, are plainly insufficient to subject Glenmark to joint and several liability for dozens of drugs it is never alleged to have sold.

Plaintiffs allege, for example, that from time to time between 2012 and 2015 certain Glenmark employees communicated with certain employees of other generic drug manufacturers on the internet, by telephone and text message, at industry dinners, and at certain routine trade association meetings or conferences.[7]  Plaintiffs primarily rely on the *fact* that these communications purportedly occurred.  In most instances, Plaintiffs do not attempt to allege the content or subject matter of Glenmark's communications.  (*E.g.*, DPP ACAC ¶¶ 198, 202, 207,

---

[6]    *E.g.*, DPP ACAC ¶¶ 8, 25-34, 35(1), 121; DPP ACAC Exhibits B and C; Marion AC ¶¶ 3-4, 43-48, 51-52; Kroger AC ¶¶ 3-6, 11, 13, 17, 122-131, 140-143; Humana AC ¶¶ 4-8, 137-172; States' AC ¶¶ 1, 7; EPP CAC ¶¶ 16-18, 23-31.

[7]    DPP ACAC ¶¶ 198, 202, 207, 211-212; DPP ACAC Exhibits D and E; Marion AC ¶¶ 52-53; Kroger AC ¶¶ 548, 553, 555-557, 561, 724-728, 730, 734, 737-738; Kroger AC Exhibit 3; Humana AC ¶¶ 181, 192, 201; States' AC ¶¶ 94-95, 308-309, 316, 322, 324, 326; EPP CAC ¶¶ 109-110, 142, 153, 161, 174, 350, 355, 390, 463, 465, 467, 471, 474-475, 481, 484, 489, 518 n.94; IRP ACAC ¶¶ 194, 198, 204, 206.

8

211-212; States' CAC ¶¶ 308-309, 316, 322, 324, 326.)  When they do make such allegations, Plaintiffs plead them only "upon information and belief" or in conclusory and speculative fashion.  (*E.g.*, Kroger AC ¶¶ 176, 555, 557, 723 (pleading "upon information and belief"); *id.* ¶ 553 (Glenmark "presumably" discussed drug pricing); EPP CAC ¶ 174 (same); *id.* ¶ 518 n.94 (Glenmark "likely" discussed Fosi-HCTZ).)

But, under the law of this Circuit, Plaintiffs' allegations "upon information and belief" cannot be credited because they have not set forth the underlying facts upon which their "information and belief" allegations are based.  *See McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 268 (3d Cir. 2016) (plaintiffs must accompany "information and belief" allegations "with factual allegations that make their theoretically viable claim plausible") (citation and internal quotation marks omitted); *Foster v. City of Philadelphia*, 2013 WL 12149716, at *1 (E.D. Pa. Sept. 12, 2013) ("wholly conclusory allegations . . . such as those alleged upon information and belief . . . are entirely insufficient").

Here, Plaintiffs do not allege, for example, that telephone communications between Glenmark employees and employees of competitors were regular in any way, or that they followed any specific pattern, as would be expected if the communications were conspiratorial in nature.  Nor do they attempt to rule out the possibility that such communications were perfectly legitimate.  It is commonplace, for example, for suppliers of generic drugs to enter into distribution arrangements, API supply agreements, or contract manufacturing partnerships—all of which are unquestionably lawful and require inter-company communications.  Moreover, Plaintiffs' Multi-Drug Complaints concede that employees of drug generic manufacturers sometimes go to work for competitors in the industry (as is true of any industry), and, even after switching jobs, remain friends with their former colleagues, such that any communications were

9

more likely than not purely social. (*E.g.*, DPP ACAC ¶¶ 13, 130; EPP CAC ¶¶ 100, 129; IRP ACAC ¶ 71.) Plaintiffs do not even attempt to link the timing of communications by Glenmark employees to the timing of alleged price increases on the two drugs it is alleged to have sold— i.e., Pravastatin and Fosi-HCTZ. (*E.g.*, DPP ACAC ¶¶ 198, 203 (communications occurred two years before Heritage implemented the first price increase for Fosi-HCTZ); *id.* ¶¶ 212-213 (communications at least six months before other alleged co-conspirators, including Glenmark, allegedly implemented price increase for Fosi-HCTZ); Kroger AC ¶¶ 561, 564 (same).)

For example, the States' CAC, which is the blueprint for the other Multi-Drug Complaints, catalogues the following communications involving Glenmark:

| Compl. Para. | When | Who Allegedly Participated | What Was Discussed | Alleged Connection to Any Glenmark Price Increase? |
|---|---|---|---|---|
| 308 | May 2, 2014 | Heritage and Glenmark | Unknown – and potentially no discussion at all ("connect[ed] . . . through the website LinkedIn") | No |
| 309 | May 8, 2014 | Aurobindo and Glenmark | Unknown (phone call) | No |
| 309 | May 9, 2014 | Aurobindo and Glenmark | Unknown (phone call) | No |
| 316 | Between June 3 and 10, 2014 | Aurobindo and Glenmark | Unknown (phone calls/text messages) | No |
| 316 | June 16, 2014 | Aurobindo and Glenmark | Unknown (phone call) | No |
| 324 | June 26, 2014 | Aurobindo and Glenmark | Unknown (phone call) | No |
| 325 | July 14, 2014 | Citron and Glenmark | Unknown (two phone calls) | No |
| 322 | July 18, 2014 | Heritage and Glenmark | Unknown (phone call) | No |
| 322 | July 30, 2014 | Heritage and Glenmark | Unknown (Phone call) | No |
| 316 | August 26, 2014 | Aurobindo and Glenmark | Unknown (phone call) | No |

As this example illustrates, Plaintiffs' overarching conspiracy theory rests in large part on the alleged fact that from time-to-time Glenmark's employees had communications with

employees of other generic drug manufacturers about something without any purported connection to any product or its price.  Plainly, these bare allegations, which are the basis for each of the Plaintiff's claims against Glenmark, do not render Plaintiffs' sweeping conspiracy theory plausible.

Plaintiffs' allegations regarding investor communications are equally insufficient.  As to Glenmark, the Multi-Drug Complaints make only two allegations—and none includes any mention of drug prices.  First, Plaintiffs claim that in Glenmark's "FY 2013-14 Annual Report, it reported 'another year of strong growth fueled by good performances across our markets like the US[.]'"  (*E.g.*, DPP ACAC, Exhibit G ¶¶ 15-16.)  The fact that a global company like Glenmark reported strong global performance provides no basis to conclude that two products sold in the U.S. were the subject of an alleged anticompetitive agreement.  Second, Plaintiffs claim that "Glenmark reported rising revenues in its United States generics business during the Class Period."  (*Id.*)  These allegations cannot possibly support a plausible inference that Glenmark reported strong growth and rising revenues *because of* participation in any overarching conspiracy, as opposed to any of the numerous other lawful reasons that a company might exhibit positive financial performance.  Accordingly, Plaintiffs' allegations with respect to Glenmark's investor communications, either alone or together with Plaintiffs' generalized allegations of competitor communications, are simply not enough to state their overarching conspiracy claims.

For each of these reasons, Plaintiffs' Multi-Drug Complaints do not plausibly connect Glenmark to any alleged overarching conspiracy.  Those overarching conspiracy claims, therefore, should be dismissed.

## II. Plaintiffs' Drug-Specific Allegations in the Multi-Drug Complaints Are Insufficient Because They Do Not Plausibly Plead Parallel Conduct.

Six of the Multi-Drug Complaints also attempt, but fail, to allege that Glenmark participated in individual Fosi-HCTZ conspiracies—in support of overarching or individual conspiracy claims—for the fundamental reason that they do not plausibly allege parallel conduct.[8]

The Multi-Drug Complaints allege no "direct evidence" of Glenmark's participation in a conspiracy to fix prices for Fosi-HCTZ. To survive a motion to dismiss, Plaintiffs therefore must plausibly allege parallel conduct and "circumstantial evidence that reasonably tends to prove that the [defendants] had a conscious commitment to a common scheme." *Monsanto Co. v. Spray-Rite Svc. Corp.*, 465 U.S. 752, 768 (1984). In its simplest form, "[p]arallel price increases" occur when "one company raises prices and its rivals follow." *In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d at 392. Here, each of the six complaints that allege individual Fosi-HCTZ conspiracies contain nothing more than the legal conclusion that Glenmark engaged in parallel pricing conduct—if they allege the element at all. (States' CAC ¶¶ 306-328; Marion AC ¶ 51(d); IRP ACAC ¶¶ 189-207; EPP CAC ¶¶ 178, 453-493; Kroger AC ¶¶ 546-565; DPP ACAC ¶¶ 192-215.) This crucial omission dooms Plaintiffs' allegations that Glenmark participated in individual Fosi-HCTZ conspiracies. *See Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The **States' CAC**, the **Marion AC**, and the **IRP ACAC** fail to include *any* well-pled factual allegations concerning Glenmark's pricing for Fosi-HCTZ. (States' CAC ¶¶ 306-328,

---

[8]   The Kroger AC and the States' CAC assert individual Fosi-HCTZ Sherman Act, Section 1 claims against Glenmark. The DPP ACAC, EPP CAC, IRP ACAC, Kroger AC, Marion AC, and States' CAC allege that Glenmark participated in a Fosi-HCTZ conspiracy in support of their overarching Sherman Act, Section 1 claims against Glenmark.

536; Marion AC ¶ 51(d); IRP ACAC ¶¶ 189-207.)  In deciding the Group 1 motions to dismiss, this Court held that Plaintiffs "must allege price increases that are reasonably proximate in time and value" to establish parallel conduct.  *In re Generic Pharms. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 441 (E.D. Pa. 2018).  Simply put, the States' CAC, the Marion AC, and the IRP ACAC fail to satisfy this requirement.  Instead, they contain only a formulaic and conclusory assertion that Glenmark "raised prices" for Fosi-HCTZ.[9]  Under the logic of this Court's prior decision, and consistent with controlling law, the States' individual claim against Glenmark as to Fosi-HCTZ and all three Multi-Drug Complaints that allege overarching conspiracy claims that, as to Glenmark, are based on alleged collusion with respect to Fosi-HCTZ should be dismissed.

The **EPP CAC** similarly fails to plausibly allege parallel pricing by Glenmark.  That complaint alleges only that the 2014 NACDS Total Store Expo was held on August 23-26, and, "[t]hereafter, multiple Defendants either led or followed price increases [including for] Fosinipril-HCTZ . . ."  (EPP CAC ¶¶ 176, 178.)  Beyond this meaningless allegation, the EPP CAC contains no well-pled facts that Glenmark raised its Fosi-HCTZ prices, let alone any description of the value or timing of such purported price increases.  (EPP CAC ¶¶ 453-493.) The EPP CAC, like the States' CAC, the Marion AC, and the IRP ACAC, does not say whether

---

[9]   States' CAC ¶ 536 ("Heritage communicated directly with Defendants Aurobindo, Citron, Glenmark, and Sandoz, and obtained agreements with Aurobindo, Citron, Glenmark and Sandoz to raise prices for the generic drug Fosi-HCTZ"); Marion AC ¶ 51(d) (citing only to the deficient Fosi-HCTZ allegations in the States' CAC); IRP ACAC ¶ 207 ("The agreement between Aurobindo, Citron, Glenmark, Heritage and Sandoz regarding Fosi-HCTZ was part of [the] conspiracy . . . to fix, raise or stabilize the prices of" Fosi-HCTZ).

13

Glenmark's purported Fosi-HCTZ price increase(s)—which are alleged in only the most conclusory terms—were reasonably proximate in time and value.[10]

The **Kroger AC** and the **DPP ACAC** are plagued by the same defect. These complaints allege that Heritage raised Fosi-HCTZ prices 200% on June 26, 2014. (Kroger AC ¶ 556; DPP ACAC ¶¶ 203, 206.) The Kroger AC makes the conclusory statement that, in June 2014, Glenmark informed other Defendants that it would "follow Heritage's forthcoming price increase." (Kroger AC ¶ 563.) Then, by January 2015, Defendants Glenmark, Aurobindo, Citron, and Sandoz allegedly implemented the "increased pricing" and the "agreed-upon" price increases. (Kroger AC ¶ 564; DPP ACAC ¶ 213.) These complaints by Kroger and DPPs contain no description of the value or timing of Glenmark's supposed Fosi-HCTZ price increase(s), except for the allegation that it may have occurred as late as January 2015—i.e., six months later. That allegation, standing alone, does not plausibly establish parallel conduct, and thus, as to the Kroger AC, is insufficient to state an individual conspiracy claim under Section 1, and, as to both the Kroger AC and the DPP ACAC, are implausible under *Twombly*.

The failure to plausibly plead parallel conduct as to Glenmark is not unique to the allegations regarding Fosi-HCTZ. Kroger's claim with respect to Pravastatin fails for a similar reason. The Kroger AC merely alleges that "[b]etween July 2013 and October 2013, Actavis, Apotex, Glenmark, Teva, Dr. Reddy's, Lupin, Zydus, Sandoz and Mylan each increased their prices for generic Pravastatin" and that the price increases were purportedly "taken in stair-step fashion" and continued "throughout the remainder of 2013." (Kroger AC ¶¶ 718-719.) In the

---

[10] Plaintiffs' use of the vague term "thereafter" (EPP ¶ 178) says nothing about timing, but only sequence. The fact that one thing follows another does not establish a causal relationship. And Plaintiffs do not allege whether any supposed price increase—that Glenmark purportedly either "led" or "followed"—occurred days, months, or even years after this Expo.

absence of specific price data showing that Glenmark raised prices contemporaneously with its competitors, the Kroger AC's claim of parallel pricing rests on the bald, legally-insufficient assertion that Glenmark increased Pravastatin prices at some time between July and December 2013. (*Id.* ¶¶ 716-741.) This is plainly insufficient under *Twombly* to satisfy the threshold requirement of parallel conduct and thus Kroger's Pravastatin conspiracy claim should also be dismissed as to Glenmark.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the Joint Brief, the Court should dismiss, in full and with prejudice, as to Glenmark, (1) the Sherman Act claims in the Multi-Drug Complaints for an overarching conspiracy, (2) the individual Fosi-HCTZ claims in the States' Complaint and the Kroger Complaint, and (3) the individual Pravastatin claim in the Kroger Complaint, as specified in Glenmark's accompanying Motion to Dismiss.

| | |
|---|---|
| Dated: February 21, 2019 | **MORGAN, LEWIS & BOCKIUS LLP** |
| | |
| | */s/ Steven A. Reed* |
| | Steven A. Reed |
| | R. Brendan Fee |
| | Melina R. DiMattio |
| | 1701 Market Street |
| | Philadelphia, PA 19103 |
| | Telephone: +1.215.963.5000 |
| | Facsimile: +1.215.963.5001 |
| | steven.reed@morganlewis.com |
| | brendan.fee@morganlewis.com |
| | melina.dimattio@morganlewis.com |
| | |
| | Andrew S. Wellin |
| | 101 Park Avenue |
| | New York, NY 10178-0060 |
| | Telephone: +1.212.309.6154 |
| | Facsimile: +1.212.309.6001 |
| | andrew.wellin@morganlewis.com |
| | |
| | *Attorneys for Defendant* |
| | Glenmark Pharmaceuticals Inc., USA |